## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ALMONDNET, INC., and INTENT IQ, LLC, | |
| Plaintiffs, | Case No. 6:21-cv-00731 |
| v. | **JURY TRIAL DEMANDED** |
| ROKU, INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT AGAINST
## ROKU, INC.

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. and Intent IQ, LLC (collectively, "Plaintiff" or "AlmondNet") makes the following allegations against Defendant Roku, Inc. ("Defendant" or "Roku"):

### INTRODUCTION AND PARTIES

1.      This complaint arises from Defendant's unlawful infringement of the following United States patents owned by AlmondNet, each of which generally relate to novel internet / network based advertising systems and methods: United States Patent Nos. 8,244,586; 10,026,100; 8,677,398; 10,715,878; 8,566,164; 10,321,198; 10,628,857; 7,822,639; 8,595,069 (collectively, the "Asserted Patents"). AlmondNet owns all right, title, and interest in each of the Asserted Patents to file this case.

2.      AlmondNet, Inc. is a is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd Suite 404, Long Island City, NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business

1

at 37-18 Northern Blvd Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC are collectively referred herein as "AlmondNet." Established in 1998, AlmondNet is an industry leader and pioneer in privacy-friendly, targeted advertising. AlmondNet has developed an extensive suite of industry-leading targeted advertising solutions and products, is focused on R&D and the licensing of its extensive portfolio of enabling technology and Intellectual Property covering numerous areas of the targeting landscape and ecosystem, including profile based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

3.       On information and belief, Defendant Roku, Inc. ("Roku") is a Delaware corporation with a regular and established place of business located at 9606 N. Mopac Expressway, Suite 400, Austin, Texas 78759. Roku may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 7th Street, Suite 620, Austin, Texas 78701. Defendant designs and manufactures and/or has manufactured on its behalf abroad the Accused Products that are then sold for importation into the United States, imported into the United States, and/or sold, offered for sale, and/or used within the United States after importation.

## JURISDICTION AND VENUE

4.       This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.       This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not

offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

6.    Venue is proper in this District. For example, Roku has a regular and established place of business located at 9606 N. Mopac Expressway, Suite 400, Austin, Texas 78759. *See* https://www.roku.com/jobs/locations

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,244,586

7.    AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

8.    AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,244,586, titled "computerized systems for added-revenue off-site targeted internet advertising," issued on August 14, 2012. ('586 patent). A true and correct copy of the '586 Patent is attached as Exhibit **..**

9.    On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '586 patent.

10.    The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

11.    Defendant's infringement has been and is willful. Defendant knew of the '586 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g.,

in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '586 patent.  Despite Defendant's knowledge of the '586 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '586 patent. Accordingly, Defendant is liable for willful infringement.

12.     Defendant also knowingly and intentionally induces infringement of claims of the '586 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '586 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '586 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '586 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '586 patent, thereby specifically intending for and inducing its customers to infringe the '586 patent through the customers' normal and customary use of the Accused Products.

13.     Defendant has also infringed, and continue to infringe, claims of the '586 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '586 patent, in

violation of 35 U.S.C. § 271(c).

14.     The Accused Products satisfy all claim limitations of claims of the '586 patent. A claim charts comparing independent claims of the '586 patent to representative Accused Product, is attached as Exhibit ...

15.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '586 patent pursuant to 35 U.S.C. § 271.

16.     As a result of Defendant's infringement of the '586 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

17.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '586 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 10,026,100

18.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

19.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 10,026,100, titled "methods and apparatus for facilitated off-site targeted internet advertising," issued on July 17, 2018. ('100 patent). A true and correct copy of the '100 Patent is attached as Exhibit ...

20.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or

imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '100 patent.

21.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

22.     Defendant's infringement has been and is willful. Defendant knew of the '100 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '100 patent.  Despite Defendant's knowledge of the '100 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '100 patent. Accordingly, Defendant is liable for willful infringement.

23.     Defendant also knowingly and intentionally induces infringement of claims of the '100 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '100 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '100 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '100 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '100 patent, thereby specifically intending for and inducing its customers to infringe the '100 patent through the

customers' normal and customary use of the Accused Products.

24.     Defendant has also infringed, and continue to infringe, claims of the '100 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '100 patent, in violation of 35 U.S.C. § 271(c).

25.     The Accused Products satisfy all claim limitations of claims of the '100 patent. A claim charts comparing independent claims of the '100 patent to representative Accused Product, is attached as Exhibit ..

26.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '100 patent pursuant to 35 U.S.C. § 271.

27.     As a result of Defendant's infringement of the '100 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

28.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '100 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,677,398

29.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

30.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,677,398, titled "system and methods for taking action with respect to one network-connected device based on activity on another device connected to the same network," issued on March 18, 2014. ('398 patent). A true and correct copy of the '398 Patent is attached as Exhibit **..**

31.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '398 patent.

32.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

33.     Defendant's infringement has been and is willful. Defendant knew of the '398 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '398 patent.  Despite Defendant's knowledge of the '398 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '398 patent. Accordingly, Defendant is liable for willful infringement.

34.     Defendant also knowingly and intentionally induces infringement of claims of the

'398 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '398 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '398 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '398 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '398 patent, thereby specifically intending for and inducing its customers to infringe the '398 patent through the customers' normal and customary use of the Accused Products.

35.     Defendant has also infringed, and continue to infringe, claims of the '398 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '398 patent, in violation of 35 U.S.C. § 271(c).

36.     The Accused Products satisfy all claim limitations of claims of the '398 patent. A claim charts comparing independent claims of the '398 patent to representative Accused Product, is attached as Exhibit **.

37.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the

'398 patent pursuant to 35 U.S.C. § 271.

38.     As a result of Defendant's infringement of the '398 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

39.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '398 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

<u>**COUNT IV**</u>

<u>**INFRINGEMENT OF U.S. PATENT NO. 10,715,878**</u>

40.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

41.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 10,715,878, titled "targeted television advertisements based on online behavior," issued on July 14, 2020. ('878 patent). A true and correct copy of the '878 Patent is attached as Exhibit **..**

42.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '878 patent.

43.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

44.     Defendant's infringement has been and is willful. Defendant knew of the '878 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '878 patent.  Despite Defendant's knowledge of the '878 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '878 patent. Accordingly, Defendant is liable for willful infringement.

45.     Defendant also knowingly and intentionally induces infringement of claims of the '878 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '878 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '878 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '878 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '878 patent, thereby specifically intending for and inducing its customers to infringe the '878 patent through the customers' normal and customary use of the Accused Products.

46.     Defendant has also infringed, and continue to infringe, claims of the '878 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a

staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '878 patent, in violation of 35 U.S.C. § 271(c).

47.     The Accused Products satisfy all claim limitations of claims of the '878 patent. A claim charts comparing independent claims of the '878 patent to representative Accused Product, is attached as Exhibit **.

48.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '878 patent pursuant to 35 U.S.C. § 271.

49.     As a result of Defendant's infringement of the '878 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

50.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '878 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 8,566,164

51.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

52.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,566,164, titled "targeted online advertisements based on viewing or interacting with television advertisements,"

issued on October 22, 2013 ('164 patent). A true and correct copy of the '164 Patent is attached as Exhibit **..**

53.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '164 patent.

54.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

55.     Defendant's infringement has been and is willful. Defendant knew of the '164 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '164 patent.  Despite Defendant's knowledge of the '164 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '164 patent. Accordingly, Defendant is liable for willful infringement.

56.     Defendant also knowingly and intentionally induces infringement of claims of the '164 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '164 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '164 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '164 patent. Defendant does so knowing and intending that its customers

and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '164 patent, thereby specifically intending for and inducing its customers to infringe the '164 patent through the customers' normal and customary use of the Accused Products.

57.     Defendant has also infringed, and continue to infringe, claims of the '164 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '164 patent, in violation of 35 U.S.C. § 271(c).

58.     The Accused Products satisfy all claim limitations of claims of the '164 patent. A claim charts comparing independent claims of the '164 patent to representative Accused Product, is attached as Exhibit **.

59.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '164 patent pursuant to 35 U.S.C. § 271.

60.     As a result of Defendant's infringement of the '164 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

61.     Defendant's infringing activities have injured and will continue to injure

AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '164 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 10,321,198

62.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

63.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 10,321,198, titled "system and methods for dealing with online activity based on delivery of a television advertisement," issued on June 11, 2019 ('198 patent). A true and correct copy of the '198 Patent is attached as Exhibit **..**

64.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '198 patent.

65.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

66.     Defendant's infringement has been and is willful. Defendant knew of the '198 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '198 patent.  Despite Defendant's knowledge of the '198 patent, Defendant continued

to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '198 patent. Accordingly, Defendant is liable for willful infringement.

67.     Defendant also knowingly and intentionally induces infringement of claims of the '198 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '198 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '198 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '198 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '198 patent, thereby specifically intending for and inducing its customers to infringe the '198 patent through the customers' normal and customary use of the Accused Products.

68.     Defendant has also infringed, and continue to infringe, claims of the '198 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '198 patent, in violation of 35 U.S.C. § 271(c).

69.     The Accused Products satisfy all claim limitations of claims of the '198 patent. A claim charts comparing independent claims of the '198 patent to representative Accused Product,

is attached as Exhibit **..**

70.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '198 patent pursuant to 35 U.S.C. § 271.

71.     As a result of Defendant's infringement of the '198 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

72.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '198 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

### COUNT VII

### INFRINGEMENT OF U.S. PATENT NO. 10,628,857

73.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

74.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 10,628,857, titled "methods and apparatus for facilitated off-site targeted internet advertising," issued on April 21, 2020 ('857 patent). A true and correct copy of the '857 Patent is attached as Exhibit **..**

75.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '857 patent.

76.     The infringement of the Asserted Patents is also attributable to Defendant.

Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

77.    Defendant's infringement has been and is willful. Defendant knew of the '857 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '857 patent.  Despite Defendant's knowledge of the '857 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '857 patent. Accordingly, Defendant is liable for willful infringement.

78.    Defendant also knowingly and intentionally induces infringement of claims of the '857 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '857 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '857 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '857 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '857 patent, thereby specifically intending for and inducing its customers to infringe the '857 patent through the customers' normal and customary use of the Accused Products.

79.    Defendant has also infringed, and continue to infringe, claims of the '857 patent by offering to commercially distribute, commercially distributing, making, and/or importing the

Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '857 patent, in violation of 35 U.S.C. § 271(c).

80.     The Accused Products satisfy all claim limitations of claims of the '857 patent. A claim charts comparing independent claims of the '857 patent to representative Accused Product, is attached as Exhibit **.

81.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '857 patent pursuant to 35 U.S.C. § 271.

82.     As a result of Defendant's infringement of the '857 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

83.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '857 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT VIII

## INFRINGEMENT OF U.S. PATENT NO. 7,822,639

84.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if

fully set forth herein.

85.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 7,822,639, titled "added-revenue off-site targeted internet advertising," issued on October 26, 2010 ('639 patent). A true and correct copy of the '639 Patent is attached as Exhibit **..**

86.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '639 patent.

87.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

88.     Defendant's infringement has been and is willful. Defendant knew of the '639 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '639 patent.  Despite Defendant's knowledge of the '639 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '639 patent. Accordingly, Defendant is liable for willful infringement.

89.     Defendant also knowingly and intentionally induces infringement of claims of the '639 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '639 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '639 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through

user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '639 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '639 patent, thereby specifically intending for and inducing its customers to infringe the '639 patent through the customers' normal and customary use of the Accused Products.

90.     Defendant has also infringed, and continue to infringe, claims of the '639 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '639 patent, in violation of 35 U.S.C. § 271(c).

91.     The Accused Products satisfy all claim limitations of claims of the '639 patent. A claim charts comparing independent claims of the '639 patent to representative Accused Product, is attached as Exhibit **.

92.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '639 patent pursuant to 35 U.S.C. § 271.

93.     As a result of Defendant's infringement of the '639 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together

with interest and costs as fixed by the Court.

94.     Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '639 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT IX

## INFRINGEMENT OF U.S. PATENT NO. 8,595,069

95.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

96.     AlmondNet owns all rights, title, and interest in U.S. Patent No. 8,595,069, titled "system and methods for dealing with online activity based on delivery of a television advertisement," issued on November 26, 2013 ('069 patent). A true and correct copy of the '069 Patent is attached as Exhibit **..**

97.     On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ("Accused Products"), such as, e.g., Roku's advertising platform, that directly infringe, literally and/or under the doctrine of equivalents, claims of the '069 patent.

98.     The infringement of the Asserted Patents is also attributable to Defendant. Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

99.     Defendant's infringement has been and is willful. Defendant knew of the '069 patent long before this suit was filed. For example, AlmondNet and Defendant communicated, e.g., in the 2015 time frame and after 2015, regarding AlmondNet's patent portfolio, including the

Asserted Patents. In these discussions, AlmondNet notified Defendant of the asserted patents, including the '069 patent. Despite Defendant's knowledge of the '069 patent, Defendant continued to infringe. In doing so, Defendant knew, or should have known, that its conduct amounted to infringement of the '069 patent. Accordingly, Defendant is liable for willful infringement.

100. Defendant also knowingly and intentionally induces infringement of claims of the '069 patent in violation of 35 U.S.C. § 271(b). Defendant has had knowledge of the '069 patent and the infringing nature of the Accused Products at least as early as when this Complaint was filed and/or earlier, as set forth above. Despite this knowledge of the '069 patent, Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '069 patent. Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '069 patent, thereby specifically intending for and inducing its customers to infringe the '069 patent through the customers' normal and customary use of the Accused Products.

101. Defendant has also infringed, and continue to infringe, claims of the '069 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently are, contributorily infringing the '069 patent, in violation of 35 U.S.C. § 271(c).

102.    The Accused Products satisfy all claim limitations of claims of the '069 patent. A claim charts comparing independent claims of the '069 patent to representative Accused Product, is attached as Exhibit **.**

103.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Defendant has injured AlmondNet and are liable for infringement of the '069 patent pursuant to 35 U.S.C. § 271.

104.    As a result of Defendant's infringement of the '069 patent, AlmondNet is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

105.    Defendant's infringing activities have injured and will continue to injure AlmondNet, unless and until this Court enters an injunction prohibiting further infringement of the '069 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## PRAYER FOR RELIEF

WHEREFORE, AlmondNet respectfully requests that this Court enter:

a.    A judgment in favor of AlmondNet that Defendant has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

b.    A judgment in favor of Plaintiff that Defendant has willfully infringed the Asserted Patents;

c.    A permanent injunction prohibiting Defendant from further acts of infringement of each of the Asserted Patents;

d.    A judgment and order requiring Defendant to pay AlmondNet its damages, costs,

expenses, and pre-judgment and post-judgment interest for Defendant's infringement of each of the Asserted Patents;

e.     A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to AlmondNet, including without limitation, pre-judgment and post-judgment interest;

f.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to AlmondNet its reasonable attorneys' fees against Defendant; and

g.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

AlmondNet, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: July 16, 2021                              Respectfully submitted,

*/s/ Reza Mirzaie*

Reza Mirzaie
Marc A. Fenster
James A. Milkey
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

*Attorneys for Plaintiff AlmondNet, Inc.*